# CHARLES FRANCIS BURROUGHS *v.* STATE OF MARYLAND

[No. 532, September Term, 1975.]

*Decided March 29, 1976.*

The cause was argued before ORTH, C. J., and THOMPSON, POWERS and MOORE, JJ.

*J. Michael McLaughlin, Jr.,* for appellant.

*Leroy Handwerger, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, John D. Bailey, Jr., State's Attorney for St. Mary's County,* and *John F. Slade, Assistant State's Attorney for St. Mary's County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

The sole contention presented on this appeal is that an Assistant State's Attorney for St. Mary's County, at the time of disposition on April 11, 1975, breached a plea bargain entered into by the State's Attorney on or about November 6, 1974, when appellant's guilty plea was accepted.

## I

Appellant, Charles Francis Burroughs, was indicted on April 27, 1974 by the Grand Jury for St. Mary's County and was charged with rape, assault with intent to rape and assault and battery. When the case was called for trial on November 6, 1974 appellant's trial counsel (who is also his counsel on appeal) advised the court (Mattingly, J.) that a plea bargain had been made. He stated:

> *"I'd like to inform the Court that the State and myself, on behalf of the Defendant with the Defendant's knowledge and approval have entered into a plea bargain in this matter.* The indictment presents three charges against Mr. Burroughs, *and Mr. Burroughs has decided to plead guilty to the third count of this indictment,* namely, to the charge of assault and battery occurring on November 12, 1973, at approximately 6:30 p.m. . . . ." (Emphasis added.)

Thereupon appellant was subjected to detailed interrogation concerning the voluntariness of his plea, first by defense counsel and then by the court. At the conclusion of the court's first series of questions, the State's Attorney,

John D. Bailey, Jr., summarized the State's case. As presented by him, the evidence would show forcible intercourse between appellant and the victim on November 12, 1973 in an open field in the Piney Point area of St. Mary's County. The victim was en route to her home in a trailer park after mailing a letter and had used the field as a short cut to elude appellant who had accosted her from a station wagon which he was driving. A co-defendant was also involved.

Counsel for appellant advised the court that the evidence would show that appellant had been drinking from 10 o'clock in the morning until 6:30 in the evening shortly before the crimes alleged. That, he stated, was why the appellant was "unable to recall any events with any reasonableness at all" after receiving the keys to the station wagon at approximately 6:30 p.m.[1]

The court ultimately found that appellant's plea was "freely, voluntarily and understandingly made and [the court] accepts the plea." When the court, prior to making that finding, inquired of the appellant as to whether he was pleading guilty because he was in fact guilty under the third count, the following colloquy occurred:

> "THE DEFENDANT: I don't know if I'm guilty of any of it, see, so I don't . . . Just like I- - -
>
> "THE COURT: Will you make up your mind whether you answer questions or not. If you are not, you can go before a jury and have them decide it.
>
> (The Defendant conferred with Mr. McLaughlin.)
>
> "THE COURT: The Court can't take a halfway plea. If you're going to plead guilty, you're going to plead guilty; if you're not, we'll go before a jury and let the jury do it.
>
> "THE DEFENDANT: Yes, sir, I am pleading guilty to that.

---

1. Appellant testified that he remembered "getting the keys and getting in and that is it . . . after drinking all that time. I don't even know my own name."

"THE COURT: Excuse me?

"THE DEFENDANT: I am pleading guilty to that third count.

"THE COURT: And you are pleading guilty because you are actually guilty as charged, is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: Is that correct, sir?

"THE DEFENDANT: Yes, sir." [2]

Counsel for appellant then requested a presentence investigation and that appellant be continued on bond. Both requests were granted.

## II

For reasons not disclosed by the record, sentencing of appellant did not take place until April 11, 1975, a delay of more then five months. At the disposition proceeding, the State was represented by John F. Slade, Esq., and not by Mr. Bailey.

Three witnesses testified for Mr. Burroughs, and his counsel than made a detailed and impassioned plea for leniency. In a reference to the plea bargaining, appellant's counsel stated ". . . in discussing the possibility of pleading guilty, and this is over the dam, we are sticking by what we did of course, and we are bound, there was definite evidence to connect the defendant, Mr. Burroughs, with the crime . . . but most damningly the co-defendant would have testified." Neither at that time, nor previously, were the particulars of the plea bargain spelled out.

Following these comments, the State's Attorney was given an opportunity to speak, and the following occurred:

"MR. SLADE: *Your Honor, the State considers this to be a most serious case.*

"MR. McLAUGHLIN: Your Honor, may I approach the bench for a moment?

---

2. We do not reach the question whether the guilty plea should not have been received.

"THE COURT: Yes, sir.

(Whereupon, counsel approached the bench, conferred with the Court *out of hearing of the Court Reporter,* and then returned to their respective trial tables.)

"MR. SLADE: *Your Honor, apparently I'm bound by a plea bargain that was formerly made by my predecessor State's Attorney, and according to that agreement I must remain silent. I might add that it takes everything in me to remain silent, but it's been our policy to follow agreements entered into previously, but* I'll tell you I don't take this too lightly." (Emphasis added.)

The court imposed a sentence of fifteen years imprisonment. Prior to the sentence the court addressed the appellant, in part, as follows:

*"You have committed one of the most heinous crimes known to mankind.* This is in view of the fact that you apparently have been living with a lady who calls herself Mrs. Burroughs over these years. *What possessed you to do this the Court does not know; however, relative to your health, as was pointed out that you ran fast enough when this woman resisted in trying to evade you, you ran, so apparently your health is not as bad as some would make or would like the Court to believe.*

"As I say, had you been tried before a jury, you could have been on the facts of this case found guilty of rape and facing a life term rather than something less. Bearing in mind that the jury could have limited the Court to twenty-one years, which is the maximum if they recommend mercy, but this is a crime which cannot be overlooked, and the Court regrets to say this but we cannot at all consider probation as very strongly urged by your attorney." (Emphasis added.)

After the sentencing, a final reference to the plea bargain was made by the State:

"Your Honor, as to Counts 1 and 2 of the indictment, the State would move to nol pros, in compliance with the plea bargain which has been entered into by the defense and the State's Attorney.

"THE COURT: Very well."

## III

In assessing appellant's contention, three questions must be answered: (a) Does the record sufficiently disclose the elements of a plea bargain? (b) If so, was the bargain breached? (c) Has the question of breach been preserved for appellate review?

As this Court has heretofore had occasion to emphasize, *Sturgis v. State*, 25 Md. App. 628, 637, 336 A. 2d 803 (1975), the better practice is that the record affirmatively demonstrate the acceptance of a plea bargain and its terms. Here, the elements of the plea agreement were not specifically spread on the record. Nonetheless, we think it is abundantly clear from the references in the preceding extracts, that appellant agreed to plead guilty to assault and battery (count three), that the State agreed to make no recommendation at the time of sentencing, and the State also agreed to *nol pros* the counts charging rape and assault with intent to rape upon the acceptance of the guilty plea.

We consider it also patent that the agreement was breached when the State's Attorney asserted, "Your Honor, the State considers this to be a most serious case." That these words were not lost upon the court is manifest from the comments of the sentencing judge quoted above.[3] Appellant obviously was considered by the court to have committed rape rather than assault and battery. Furthermore, the original breach was aggravated by the

---

3. It is immaterial whether or not the sentencing judge was influenced by the prosecutor's comments, if the plea bargain has been breached. Santobello v. New York, 404 U. S. 257 (1971).

comments of the State's Attorney when he returned to the counsel table after the conference at the bench [4] and expostulated that "it takes everything in me to remain silent . . . but I will tell you I don't take this too lightly."

In the landmark case in this area of the law, *Santobello v. New York*, 404 U. S. 257 (1971), Mr. Chief Justice Burger wrote for the Court that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." At 262. In addition the Chief Justice allowed no exception for a situation where the plea was entered into by a prosecutor different from the one appearing at the time of disposition:

> "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done. That the breach of agreement was inadvertent does not lessen its impact." At 262.

Maryland has, of course, followed the teaching of *Santobello*. In *Miller v. State*, 272 Md. 249, 322 A. 2d 527 (1974), the defendant was indicted on charges of receiving a stolen car, conspiracy, larceny, unauthorized use of a vehicle, and receiving other stolen goods. As a result of plea bargaining, he agreed to plead guilty to the charge of receiving a stolen car, and the State agreed to *nol pros* the other charges. The State also agreed to make no recommmendation as to sentencing or disposition. At sentencing, the State's Attorney informed the court that he was not in full agreement with the recommendations of the probation officer contained in the report of presentence investigation. The Court of Appeals held that this comment was in effect a "recommendation" as to the "disposition" of the case and thus constituted a breach of the plea bargain.

---

4. For reasons not readily apparent, appellant argues in his brief that the breach of the plea bargain occurred at the bench conference held after Mr. Slade remarked that the State considered this "to be a most serious case." As indicated, the bench conference was not recorded.

The Court quoted from *Commonwealth v. Alvarado*, 276 A. 2d 526, 529 (Pa. 1971): "[A] prosecutor's promise to make no recommendation as to sentence reasonably means a 'commitment not to make any damning or even potentially damaging statements at the time of sentencing.' "

Breaches of such agreements were found by this Court in *Sturgis v. State, supra*, and *Wynn v. State*, 22 Md. App. 165, 322 A. 2d 564 (1974). In *Sturgis*, the breach was clear and unequivocal, the State's Attorney having stated: "I'm going to deviate from the negotiations on the plea" — and then proceeded explicitly to do so. In *Wynn*, the State's Attorney indicated that he did not personally agree with the plea bargaining arrangement but that he was bound to follow it. In an opinion by Judge Lowe, this Court held that "the attempt to take back with one hand what has been held out by the other is reversible error." At 171.

Failure of performance of a plea bargain was also found by the United States Court of Appeals, Fourth Circuit, where the prosecutor presented the Government's recommended sentence, after a guilty plea, only half-heartedly. *United States v. Brown*, 500 F. 2d 375 (1974). There, the prosecutor offered a sentence recommendation according to the terms of the plea bargain and then, in response to the Court's question as to whether the prosecutor himself believed in this recommendation, stated: "Well, Your Honor, I do have some problems with that, anyhow, but that is the way I understand it." *Id.* at 377. It was held that such a comment was a breach of the plea bargain. Judge Winter, speaking for the majority (Haynsworth, Chief Judge, dissenting), stated:

"We have no occasion to consider the propriety of sentence, or recommendation as to sentence, as an element of a plea bargain, but it is manifest that the consideration which induced defendant's guilty plea was not simply the prospect of a formal recitation of a possible sentence, but rather the promise that an Assistant United States Attorney would make a *recommendation* on sentencing. This

> could reasonably be expected to be the sound advice, expressed with some degree of advocacy, of a government officer familiar both with the defendant and with his record and cognizant of his public duty as a prosecutor for the United States."
> At 377. (Emphasis in original.)

In the instant case, we conclude that the plea bargain was unquestionably breached.

We also conclude that the State's contention that the question of breach was not preserved for judicial review must be rejected. The bench conference between counsel and the court should obviously have been recorded; but we find it self-evident that the bench conference requested by appellant's counsel, immediately upon the prosecutor's statement that he considered this "a most serious case," was clearly to call to the attention of the court the existence of the plea bargain and object to the making of *any* recommendation by the State as being in violation of the bargain. We note, of course, that no further objection was interposed by appellant's counsel to the State's singular remarks immediately after the bench conference. As previously indicated, however, the breach by the State had already occurred and the objection signified by the bench conference adequately preserved the question for our review.

Appellant requests that the sentence be vacated, and that we remand the case for further proceedings. In *Santobello v. New York, supra,* the ultimate choice of remedy where a plea bargain has been breached was left to the State courts. In Maryland, the alternatives were delineated by the Court of Appeals in *Miller v. State, supra,* at 255:

> "Accordingly, where a guilty plea has been induced by the prosecutor's agreement to make no recommendation as to sentencing, and the prosecutor violates that agreement, *the defendant may at his option have the guilty plea vacated. On the other hand,* if the defendant so desires, *he may elect to leave the plea standing and be resentenced.*

> As the Supreme Court stated in *Santobello v. New York* (citation omitted), the resentencing should be *by a different judge.*" (Emphasis added.)

In *Sturgis v. State, supra*, we followed the rule of *Miller* and held that the appellant could elect to be resentenced (by a different judge) or to withdraw his guilty plea and proceed to trial.

The same doctrine was also applied in *Brockman v. State*, 27 Md. App. 682, 341 A. 2d 849 (1975). And in *United States v. Brown, supra*, where appellant sought specific enforcement of the plea bargain, it was held that "a remand for resentencing before a different district judge, after full compliance with the terms of the plea bargain, follows *a fortiori* from *Santobello.*" *Id.* at 378. In the instant case, if appellant chooses to proceed to trial, the State may elect to proceed on the *nol prossed* counts after obtaining a new indictment. *Sturgis v. State, supra.*

> *Judgment reversed; case remanded for further proceedings not inconsistent with this opinion; costs to be paid by St. Mary's County.*