**Barry L. SNIPES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 83–1227.**

District of Columbia Court of Appeals.
Argued Dec. 5, 1985.
Decided April 4, 1986.

---

Peter H. Meyers, Washington, D.C., appointed by this court, for appellant.

Fred Grabowsky, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Diane G. Clarke, and Steven I. Friedland, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before FERREN and BELSON, Associate Judges, and GALLAGHER, Senior Associate Judge.

GALLAGHER, Senior Associate Judge:

■■■ This is an appeal from a conviction, following a plea of guilty, and sentencing. Appellant challenges the trial court's denial of his motion to withdraw the guilty plea and vacate the sentence on several grounds: (1) the prosecutor breached the plea bargain agreement; (2) the court was under a misapprehension concerning the maximum sentence allowable; (3) the plea was not voluntarily and knowingly made and was without proper factual basis;[1] and (4) ineffective assistance of counsel.[2]

---

1. With regard to the voluntariness claim, the record offers little support for the contention that the plea was involuntary. Despite his equivocating on the plea, appellant told the court on five occasions, three times before the sentencing hearing and twice at the sentencing hearing, that he was not changing the plea. Furthermore, appellant had considerable experience with the criminal justice system.

2. We find no merit in the ineffective assistance of counsel argument. Appellant has failed to show either deficient performance or serious prejudice. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2071, 80 L.Ed.2d 674

On January 6, 1982, appellant and his cousin, Edward Snipes, were indicted for assault with intent to commit robbery while armed in violation of D.C.Code §§ 22–502, –3202 (1981 & 1985 Supp.)[3] On the date set for trial, May 20, 1983, appellant entered pleas of guilty to one count of attempted robbery and one count of assault with a dangerous weapon.[4] The plea, negotiated by counsel for appellant and Edward Snipes and the Assistant United States Attorney, and offered the evening before trial, required that the defendants plead guilty to the two charges in exchange for government waiver of "step-back"[5] and repeat papers. The waiver required the government not to oppose appellant's release pending sentence. After the court had accepted the guilty plea, the court ordered that Snipes be remanded to custody pending sentencing. Defense counsel, however, advocated successfully for work release. Despite its agreement to waive "step-back," the government then brought to the court's attention that Barry Snipes was an escapee.[6] Accordingly, the court held appellant without bond.

With sentence pending, appellant contacted the trial judge on several occasions. In a letter dated June 1, 1983, appellant inquired whether he should be released on work release. The trial judge responded on June 7, 1983, by explaining that work release had been denied. On June 13, 1983, Snipes asserted that his plea was not voluntary and was coerced because of his depression from incarceration. In a lengthy letter of July 13, 1983, appellant made a request, among others, that the court disregard his motion to withdraw his guilty plea. Finally, the trial judge received a letter on July 29, 1983, in which appellant, although complaining about newly retained counsel and jail conditions, reiterated his intent to go through with his plea.

A sentence was imposed on September 7, 1983. At the hearing, the trial court asked Snipes on two occasions if he wished to go ahead with the plea. On both occasions, Snipes affirmed his desire to enter the plea. Appellant moved to withdraw his plea immediately after sentencing based on involuntariness. Appellant noted a direct appeal which this court held in abeyance pending resolution of his motion to withdraw guilty plea and vacate sentence, which was filed on May 24, 1984. Finding no agreement breach, the motion was denied on November 29, 1984.[7]

(1984). The record indicates counsel adequately investigated the case, conferred with the co-defendant's counsel, and maintained adequate contact with the appellant. Counsel's failure to object after the plea breach did not prejudice appellant to the degree contemplated by *Strickland, supra,* 104 S.Ct. 2052.

3. Edward Snipes, appellant's cousin and co-defendant here, was also charged with possession of a sawed-off shotgun, in violation of D.C.Code § 22–3214(a)(1981). The victim of the assault, Ernest B. Perry, was charged with carrying a pistol without a license in violation of D.C.Code § 22–3204 (1981).

4. The plea was "wired" to require that Edward Snipes plead guilty to the same charges.

5. "Step-back" refers to the court sending the defendant back to jail while he awaits sentencing.

6. The transcript reads:
   MS. CLARKE [AUSA]: On step-back, the Detective has representations to make about Mr. Barry Snipes.
   THE COURT: All right. Just state your name for the record.
   OFFICER FONTANA: Detective Carmen Fontana. Defendant Barry Snipes is listed on the NCID as an escapee from Elemond County, South Raymond, North Carolina.
   THE COURT: I will hold him without bond, Mr. O'Bryant, and if you will clarify this to see if there is nothing holding him I will work out some sort of release. But there is nothing that I can do anyway.

7. With respect to the claim of breach, the trial court stated:
   The defendant alleges that the government violated its step-back agreement. The court does not agree. The court stepped-back both defendants. The action of the detective affected work release and not step-back. Neither Ms. Clarke [the prosecutor] nor the detective were called in this case. *There is no evidence on this record that Ms. Clarke realized that the detective was present or tried to mislead the defendant. The court does not believe that Ms. Clarke would state in open court that she waived step-back knowing that*

When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, the promise must be fulfilled. *Santobello v. United States*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1972). The government must meet a standard of strict compliance with its agreement. *White v. United States*, 425 A.2d 616, 618 (D.C. 1980). In assessing whether a breach has occurred, bad faith is immaterial. An inadvertent breach can therefore constitute a breach. *See, e.g., Santobello v. United States, supra,* 404 U.S. at 262, 92 S.Ct. at 498.

In light of the high standard imposed on the government, information offered despite a prosecutorial waiver of allocution has been deemed a breach. *See, e.g., White, supra,* 425 A.2d 616; *United States v. Cook,* 668 F.2d 317 (7th Cir.1982); *United States v. Corsentino,* 685 F.2d 48 (2d Cir.1982); *but see United States v. Block,* 660 F.2d 1086, 1092 (5th Cir.1981) (prosecutor has duty to inform court of incorrect or missing information). In this case, the waiver of step-back was an integral part of the agreement. By then proceeding to relate information that would make "step-back" mandatory, the government, in effect, breached its agreement.

We conclude, however, that on this record appellant on several later occasions declined opportunities to challenge, if not withdraw, his plea. He was given ample opportunity—at the time of the breach, in his several correspondences to the trial judge, in his *pro se* motion to withdraw his plea, and twice at the sentencing hearing—to withdraw the plea. Nevertheless, appellant affirmed his plea. Accordingly, we find appellant waived his right to challenge

the plea. *See State of Washington v. Giebler,* 22 Wash.App. 640, 591 P.2d 465, 467 (1979) (defendant was under a duty to move to withdraw his guilty plea as soon as it was apparent that state was changing its promised recommendation). The fact that appellant may not have been properly counseled that the government had committed a breach of the plea agreement is irrelevant, for it is clear that appellant had every opportunity to withdraw his plea, if, for any reason, he had wanted to do so. The case would be quite different if appellant had asked to withdraw the plea and the trial court had refused, for that scenario would, in effect, squarely present the government's breach and the trial court would have improperly ignored it.

Appellant also argues that the trial judge was under a misapprehension when he sentenced appellant so that the sentence is invalid. We find no merit in this argument. At sentencing, the court stated:

> The Court has sentenced you to three to nine years. The Court could have sentenced you up to twenty-five years. Because of your plea and because of the fact that you have to face the situation in the Carolinas, I have given you a significant sentence reduction.

Despite its misstatement at sentencing that the maximum sentence was twenty-five years, the court had correctly explained the maximum sentence of thirteen years to appellant at the time of the plea. Appellant subsequently filed a motion to vacate sentence (and to withdraw guilty plea). In overruling the motion, the trial judge considered the erroneous statement it had made at sentencing in relation to the maximum sentence receivable. The court stat-

*the defendant would be held anyway.* Again, no objection was made then or at the time of sentencing. *This record has no evidence on which to rule the government acted in bad faith.* The record shows that the court wrote to defendant in response to his work release

inquiry advising him that it would reconsider work release if his out of state problem were cleared. Defendant, in his letter, never alleged a contractual breach by the government and the court finds that there was none. (Emphasis added.)

ed it had made a "slip of the tongue" at sentencing and said the "defendant was not sentenced as if [the] maximum penalty was twenty-five years." The assertion is bolstered by the relatively light sentence—even under a thirteen-year maximum—imposed by the court. We also note that neither counsel objected at the time of the misstatement.

*Affirmed.*